Argued January 23; reversed February 18, 1947

## HAMILTON *v.* HAWORTH

(177 P. (2d) 409)

*Brazier C. Small,* of Salem, for appellant.

*W. W. McKinney,* of Salem, for respondent.

Before ROSSMAN, Chief Justice, and KELLY, BAILEY, HAY and WINSLOW, Justices.

BAILEY, J.    This is an action brought by plaintiff, Alma G. Hamilton, to recover damages for injuries

suffered by her in a collision between an automobile driven by her husband in which she was a passenger and one driven by defendant, Charles C. Haworth. From a judgment in favor of defendant, plaintiff has appealed.

The mishap occurred at the intersection of south Commercial and Lincoln streets in the city of Salem, at about 12.20 p. m., on April 8, 1945. South Commercial street is a part of Pacific highway 99E and at the place of the accident is paved between curbs, a distance of 42 or 43 feet. Lincoln street is also paved. On the day of the accident the pavement was dry and the visibility good.

Both plaintiff and her husband were employed on the graveyard shift—12.30 a. m. to 8 a. m.—at a shipyard in Vancouver, Washington. On the morning of the accident they went from work to their home, changed their clothes and started for Eugene, Oregon, about 9 o'clock. They stopped 15 or 20 minutes for breakfast. The distance between their home and the place of the accident is approximately 70 miles. At no time, according to their testimony, did they travel over 30 miles an hour, and when they reached the city limits of Salem, Mr. Hamilton slowed down to about 20 or 25 miles an hour.

The collision occurred substantially as follows: Mr. Hamilton was traveling in a southerly direction on south Commercial street and as his car was about to enter the intersection of that street and Lincoln street, the defendant, who was traveling in a northerly direction on south Commercial street, suddenly turned his automobile at the intersection to his left and started to cross the west half of south Commercial street immediately in the path of the approaching Hamilton

car. The Hamilton car struck the Haworth car on its right side near the middle thereof and proceeded in a southeasterly direction, striking the Senz car, which had been following the Haworth car and had stopped on south Commercial street a few feet south of the intersection when the driver thereof saw that the collision between the Hamilton and Haworth cars was imminent. The front of Haworth's car was, according to the testimony of the traffic officer, approximately nine feet east of the west curb of south Commercial street at the time of the collision. Mr. Haworth thought that it was closer. When that car came to rest after the accident it was off, and a few feet west of, the paved portion of south Commercial street, facing east.

Mr. Haworth testified that he began signaling for a left turn about 100 feet south of the intersection. At that time he looked to the north and there were no cars in sight. He further testified as follows:

"Q. Did you look to the north after that period until after the accident?
A. I think not. I was watching the car which had just stopped at State Street. Commercial Street.
Q. And how fast were you driving at that occasion, Mr. Haworth?
A. I suppose I was driving about twelve or fifteen miles an hour.
Q. And had you looked north prior to making the turn, could you have seen the Hamilton car?
A. Possibly I would have seen it.
          *          *          *          *          *
Q. Now, Mr. Haworth, you know how far the Hamilton car was north of the intersection of Lincoln Street when you first saw it?
A. No, I couldn't say. I don't think it was ten feet from my car when I first saw it.
          *          *          *          *          *

Q. Now, Mr. Haworth, can you tell the jury in your opinion what speed the Hamilton car was going when you first saw it?

A. No, I can't testify as to that. It was too close. There was no chance to judge speed.''

Mr. Rell Main, who had been a traffic officer about nine years for the city of Salem, testified that he had parked his automobile on the south side of Lincoln street a few feet west of south Commercial street five or ten minutes before the accident and was observing the traffic on south Commercial street at the time the mishap occurred. He saw the Haworth car approaching from the south and observed Mr. Haworth signal for a left turn. He also saw the Hamilton car 130 to 140 feet north of the intersection and was of the opinion that it was traveling ''in the neighborhood of 25 miles an hour. Between that and thirty, along about there. Not to exceed any limit of speed through that street.'' He described the accident as follows:

''A. Then Mr. Haworth pulled on to the intersection and started through and got practically turned straight. He was at a little diagonal, possibly this much, but still turning, when the other car struck the right hand side of his car.

Q. What portion of the Hamilton car struck the— or vice versa? Where did the cars meet or come together with the portions of each car?

A. Well, I would judge that it must have been, of course, the front part of the Hamilton car struck about possibly the center of the Haworth car on the right hand side and glanced off. Ricocheted, in other words, and went head-on into the other automobile [Senz's car].

Q. Now, before we get to the other automobile, was there any change in the course of the Hamilton car after they came together?

A. It appeared that the only split seconds before the collision, that the Hamilton car swayed to

the left in trying to avoid striking the other car and could not clear it.''

Mr. Hamilton testified that he did not remember anything that occurred at the time of the accident, although he did remember very distinctly the trip from his home to Salem. Mrs. Hamilton gave the following testimony concerning her recollection of the collision:

"Q. At the time you entered Lincoln Street how fast were you going?

A. We were going about twenty or twenty-five.

Q. And did you have any chance to measure the speed of the Haworth car?

A. No. It was just coming along towards us.

Q. Well, now, you just state what happened there when the cars come together?

A. Well, this car turned in front of us and it was all so quick. I screamed and that is about all I can remember. I can remember hitting this Haworth's car, but as far as the other car is concerned, I can't remember anything about that.''

The complaint alleges that the defendant was negligent in the following particulars: That he operated his automobile without due caution and circumspection; that he turned his automobile to his left into Lincoln street "close to and immediately in front of" the automobile in which plaintiff was riding; that he failed to keep his automobile under control; that he made the left turn without first ascertaining that it could be made with safety, and that he failed to keep any lookout for traffic approaching from the north. Defendant, in his second, further and separate answer and defense, alleges that Mr. Hamilton was guilty of carelessness, recklessness and negligence contributing to the accident, as follows: That he failed to keep and maintain a proper lookout for traffic on south Com-

482

mercial street and particularly for the car being driven and operated by defendant; that he failed to keep his automobile under control; that he drove his car at a speed greater than was reasonable or prudent, having due regard for traffic, surface and width of the highway and the hazard at the intersections; that he failed to yield the right of way to the automobile being driven by defendant, and that he operated his automobile without due caution or circumspection. It is then alleged that the plaintiff knew or in the exercise of reasonable care should have known that Mr. Hamilton was driving his car in a reckless, careless and negligent manner, as thereinbefore alleged, and that she "acquiesced in all the negligent acts of the said O. R. Hamilton as are hereinabove alleged, and failed to make any remonstrance or objection as to" his negligent acts, and that the "carelessness, recklessness and negligence" on the part of plaintiff caused and contributed to the accident mentioned in plaintiff's complaint.

At the conclusion of the introduction of evidence, plaintiff moved that the question of plaintiff's alleged contributory negligence be taken from the consideration of the jury on the ground that there was no evidence that she was guilty of contributory negligence. Plaintiff also requested that the court instruct the jury "that defendant's second, separate, further answer and defense is withdrawn from your consideration." The denials of these requests constitute two of plaintiff's assignments of error.

■ It is the duty of a guest passenger to use ordinary care for his own safety. *Koski v. Anderson,* 157 Or. 349, 71 P. (2d) 1009. Whether he has exercised that care is usually a question of fact. *Whiting v. Andrus,* 173 Or. 133, 144 P. (2d) 501. However, when the facts are

such that reasonable minds can draw but one conclusion therefrom, the question becomes one of law. Plaintiff contends that the court should hold, as a matter of law, that there is no substantial evidence from which the jury could have found that she was guilty of contributory negligence.

Mrs. Hamilton had never operated an automobile. Her husband was a competent and experienced driver. The accident occurred on a through street, which was a part of one of the main arterial highways of the state highway system. From the time plaintiff and her husband left their home near Vancouver, Washington, Mr. Hamilton had not driven in excess of 30 miles an hour because of Mrs. Hamilton's nervousness and the speed limit placed by the federal government on automobile driving. There is no evidence that he was driving at an excessive rate of speed at the time of the collision. The traffic officer testified that Hamilton was not exceeding ''any limit of speed through that street.'' He also testified that the Hamilton and Haworth cars were about 50 feet apart when the Haworth car started to turn. We now quote further from the plaintiff's testimony concerning the accident:

''Q. And as you approached Lincoln Street what happened?

A. Why, I saw this Mr. Haworth's car coming towards us.

Q. Pardon me, this car belonged to the defendant, Mr. Haworth?

A. That is right.

Q. All right.

A. He was coming toward us and I was watching the traffic and I didn't see him hold out his hand. When he turned it looked like he was going to go right by us and he got—it seemed like right on top of us and he turned right in front of us.

Q. Turned in which direction?
A. Turned to his right.
Q. Turned to his left, it would be? Didn't he go up Lincoln?
A. Yes."

Section 115-335 (a), O. C. L. A., provides in part as follows: "The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety." And § 115-337 (c) provides that the "driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard".

Mr. Haworth did not, according to his own testimony, observe these explicit and salutary rules of the road. He stated that he was watching the traffic officer's car and two pedestrians crossing Lincoln street and was about 100 feet south of the intersection when he last looked for approaching cars from the north.

■■ It is not incumbent upon a passenger to tell the driver of every approaching automobile which is as manifest to the driver as to the passenger. Nor is a passenger negligent in failing to warn the driver of a danger if the driver is already aware of it. Before a passenger can be charged with contributory negligence in failing to warn the driver, there must be, first, an opportunity to be apprized of the threatened danger, and second, a further opportunity to give the warning. 5 Berry, Automobiles, 7th Ed., § 5.171, p. 255.

Under the facts of this record there was no duty resting on plaintiff to warn the driver of the car in

which she was a passenger of the approaching Haworth car, nor to attempt to control his operation of the automobile. Everything that she could see was equally, if not more, visible to the driver. There was nothing to indicate to her that there was danger of a collision until it was imminent and there was nothing that she could have done which would have affected the result. She had a right to assume that her husband knew how to operate the car and that he was driving properly. She also had the right to assume that the driver of the Haworth car would obey the law.

In *Whiting v. Andrus,* supra, it was ruled that there was no substantial evidence that the guest passenger was guilty of contributory negligence and that the court erred in submitting that question to the jury. Although the facts in that case are somewhat different from those in the present one, yet much of what was said there is applicable to this case.

■ It is our opinion that the court erred in not taking from the jury the question whether or not plaintiff was guilty of contributory negligence. We also think that this error was prejudicial and that had the court taken that question from the consideration of the jury the verdict might have been otherwise.

Several other assignments of error are set forth in plaintiff's brief. They have all been carefully considered. The questions presented by these assignments have been decided by this court several times adversely to plaintiff's contention and no good purpose would be served by again discussing them. These assignments are without merit.

The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

KELLY, J., did not participate in this decision.